**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WILLIE EARL ELDRIDGE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-240-RAW-KEW** |
| | ) | |
| **CARL BEAR, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**OPINION AND ORDER**

This matter is before the court on Petitioner's petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. [Doc. 4]. A brief in support of the § 2254 petition was also filed with the court. [Doc. 12]. Petitioner, a prisoner in the custody of the Oklahoma Department of Corrections, is currently incarcerated at the Joseph Harp Correctional Center in Lexington, Oklahoma.

Petitioner is attacking his conviction and sentence in Atoka County District Court Case No. CF-2013-16, for one count of first degree rape of a child under the age of fourteen (21 O.S.2011, § 1114(A)(1)), 22 counts of forcible sodomy (21 O.S.2011, § 888), and eight counts of lewd molestation of a child under the age of twelve (21 O.S.2011, § 1123). In that case, he was sentenced to 40 years of imprisonment for one count of first degree rape, 25 years of imprisonment on each count of lewd molestation, and 20 years of imprisonment on each count of forcible sodomy. He is also attacking his conviction and a 40-year sentence in another case, Atoka County District Court Case No. CF-2013-78, for one count of first degree rape (21 O.S.2011, § 1114(A)(5)). The state court ordered the sentences in both cases to be served concurrently, resulting in a total imprisonment time of 40 years.

Petitioner sets forth six grounds for relief within the § 2254 petition:

I.     The record establishes that Petitioner was not competent when the criminal proceedings were resumed.

II.      Petitioner was denied the effective assistance of counsel in the post-competency examination hearing, resulting in his being forced to trial while incompetent.

III.     Petitioner's trial counsel was operating under a conflict of interest in representing both Petitioner as well as Petitioner's older brother.

IV.     The Information was vague.

V.     The sentence was excessive.

VI.     Cumulative error.

Respondent filed a response on November 14, 2016. [Doc. 16]. Respondent concedes that the § 2254 petition is timely filed and that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. *Id*. at 2.[1] The grounds for relief asserted herein were also presented to the Oklahoma Court of Criminal Appeals ("OCCA"). The following have been submitted for consideration in this matter:

A.     Petitioner's direct appeal brief.

B.     State's brief in Petitioner's direct appeal.

C.     Summary Opinion affirming Petitioner's judgment and sentence.

D.     Motion to supplement appeal record.

E.     Transcripts.

F.     State court record.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1]     This court's record citations refer to the CM/ECF page numbers in the upper right-hand corner of each document.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).


**Factual Background**

The first victim in this case, A.J., was born in July of 1998. [Doc. 17-6 at 14]. Petitioner is the former step-uncle of A.J. *Id*. at 15-16. Petitioner's older brother, Loyd Eldridge, Sr., was A.J.'s step-father. *Id*. Petitioner lived with his parents in Atoka County, Oklahoma, and was a babysitter for A.J. and her younger brother. *Id*. at 17. On occasion, Petitioner's parents were present when he babysat A.J. and her brother, and sometimes it was just the children and Petitioner. *Id*. at 18. When A.J. was around six or seven years old, Petitioner raped her in his bedroom. *Id*. at 22-23. He also repeatedly sodomized and sexually molested A.J. during the time when she was approximately six to twelve years old. *Id*. at 19-31.

The other victim in this case, K.E., was born in April of 1998. *Id*. at 67. Petitioner is K.E.'s uncle. *Id*. K.E. suffers from spina bifida and is paralyzed from the knees down. *Id*. at 78. When K.E. was about ten or eleven years old, she was at Petitioner's house with A.J. *Id*. at 70. Petitioner took K.E. into his bedroom and raped her. *Id*. at 68-72, 75-81.

Petitioner was born in January of 1979 and was an adult at the time of the above offenses. [Doc. 17-2 at 4-5].


**Ground I: The record establishes that Petitioner was not competent when the criminal proceedings were resumed.**

Relying upon cases such as *Medina v. California*, 505 U.S. 437 (1992)*, Dusky v. United States*, 362 U.S. 402 (1960) (*per curiam*), and *Cooper v. Oklahoma*, 517 U.S 348 (1996), Petitioner argues that he was incompetent to stand trial. [Doc. 12 at 17-24]. In short, Petitioner was evaluated by a forensic psychologist, Shawn Roberson, Ph.D. Dr. Roberson prepared a report with findings

that Petitioner was competent to stand trial. [Doc. 17-8 at 20-30]. The following year, Petitioner was convicted of all charges following a bench trial. In Ground I, Petitioner argues that the report did not include any information that indicated he was presently competent, but only that it was possible for him to become competent. [Doc. 12 at 18].

Scrutinizing the report, Petitioner highlights prior scores from four intelligence quotient ("IQ") tests that were previously administered in public schools, ranging from a low of 75 to a high of 81, along with the IQ score of 66 from Dr. Roberson's test, suggesting that the scores prove incompetence. *Id.* at 20-21. Petitioner also points out that Dr. Roberson administered the Competence Assessment for Standing Trial for Defendants with Mental Retardation test, noting that Petitioner scored "below the norm for those in the 'retardation-incompetent' group in his understanding of basic legal concepts and skills to assist in his defense." *Id.* at 21. Petitioner ultimately concludes that Dr. Roberson's findings "indicated that [Petitioner] was not competent at the time of the examination, but that he could achieve competence depending on how trial counsel interacted with him." *Id.* at 23. He then argues that "[t]his is the crux of the matter -- there is no evidence in the record that trial counsel did any of these things, and in fact as outlined below, [Petitioner] asserts that trial counsel was ineffective." *Id.*

In response, Respondent claims Petitioner's Ground I must be denied because Petitioner fails to show the finding by the OCCA was contrary to, or an unreasonable application of, Supreme Court precedent, or an unreasonable determination of the facts. [Doc. 16 at 7-8, 13]. Respondent first asserts that competency to stand trial is a factual issue within the meaning of 28 U.S.C. § 2254(d). *Id.* at 8. Relying upon the reasoning in *Thompson v. Keohane*, 516 U.S. 99, 111 (1995), Respondent argues that "a trial court is better positioned to make decisions regarding factual issues such as competency and has accorded the judgment of the jurist-observer 'presumptive weight.' " *Id.* Then, citing *Gilbert v. State*, 951 P.2d 98, 103 (Okla. Crim. App. 1997), Respondent reminds the court that, under Oklahoma law, a defendant "is presumed to be competent to stand trial and has the burden of proving his incompetence." *Id.* at 9. Next, Respondent asserts that Petitioner "did not present any information at trial, and presented none on appeal, that would show he did not have sufficient ability to consult with his lawyer or that he did not have a rational and actual understanding of the proceedings against him." *Id.* at 11. Respondent argues that "[a]t most, Petitioner cites examples of his low intelligence which do not

automatically equate to incompetence." *Id*. Lastly, Respondent contends that Petitioner's claims are general and speculative assertions, that Petitioner has "presented nothing to rebut the findings of Dr. Roberson that he was competent to stand trial," and that "Petitioner's limited intelligence notwithstanding, he failed to show by a preponderance of the evidence that he was legally incompetent to stand trial." *Id*. at 13.

The OCCA rejected Petitioner's claim on direct appeal, finding as follows:

> As to Proposition I, Appellant's request for a competency evaluation was granted without objection by the State. The forensic psychologist concluded that Appellant, while suffering from intellectual deficits, was nevertheless competent to proceed. Appellant then waived his right to a trial on the issue. He offers no convincing reason for this Court to question either the examiner's findings, or his own ability to waive further challenge to same. *Doyle v. State*, 1989 OK CR 85, ¶¶ 19-25, 785 P.2d 317, 324-26; *Kiser v. State*, 1989 OK CR 76, ¶¶ 6-10, 782 P.2d 405, 407-09. Proposition I is denied.

*Eldridge*, slip op. at 2.

After carefully reviewing the documents filed herein, this court agrees. On February 13, 2013, Petitioner appeared with his attorney of record, Ryan Rennie, at the Preliminary Hearing Conference in the District Court for Atoka County, Oklahoma. [Doc. 17-8 at 17]. At Petitioner's request, and with no objection from the State, the Honorable Judge Preston Harbuck ordered a competency evaluation. *Id*. The criminal proceedings were stayed until further order of the court. *Id*. The court specifically ordered that the Petitioner "be examined by a qualified forensic evaluator with the intent to determine if [Petitioner] suffers from a mental illness or DDSD pursuant to Title 43A of the Oklahoma Statutes." *Id*. at 18. The court further ordered that the qualified forensic examiner shall examine Petitioner and answer the following questions:

1.      If the person is able to appreciate the nature of the charges made against such person;

2.      If the person is able to consult with the lawyer and rationally assist in the preparation of the defense of such person;

3.      If the person is unable to appreciate the nature of the charges or to consult and rationally assist in the preparation of the defense, whether the person can attain competency within a reasonable period of time as defined in Section 1175.1 of this title if provided with a course of treatment, therapy or training;

4. If the person is a person requiring treatment as defined by Section 1-103 of Title 43A of the Oklahoma Statutes;

5. If the person is incompetent because the person is mentally retarded as defined in Section 1408 of Title 10 of the Oklahoma Statutes;

6. If the answers to questions 4 and 5 are "No", why Defendant is incompetent; [and]

7. If the person were released, whether such person would presently be dangerous as defined in Section 1175.1 of this title.

*Id*. at 18-19.

Soon thereafter, Dr. Roberson examined Petitioner on an outpatient basis. He reviewed the criminal complaint information and probable cause affidavit, along with available medical and educational records. Dr. Roberson also interviewed several witnesses, including Petitioner's mother, Petitioner's attorney, and a staff member at the Atoka County Detention Center. A ten-page report was prepared and submitted to Judge Harbuck on March 29, 2013. [Doc. 17-8 at 20-30]. Ultimately, and of particular importance herein, Dr. Roberson provided the following report summary:

Mr. Eldridge's intelligence was consistently tested to be in the high Borderline (between Mental Retardation and Low Average) to low Average ranges while in school; though currently it tested in the range of Mild Mental Retardation. Mental Retardation must have an onset prior to age 18 and the available data does not support that Mr. Eldridge meets diagnostic criteria. I suspect that his current score was depressed due to his current situation. During the current evaluation Mr. Eldridge's responses supported that he appreciated the nature of the charges against him. He demonstrated a poor understanding of basic legal and case information. However, given his lower than average intelligence and lack of experience with the criminal justice system, this may be remediated through a meeting with his attorney. In addition, a Borderline to Low Average range of intelligence is not associated with incompetence. Therefore, it is the opinion of this examiner that he can consult with his attorney and rationally assist in his defense.

*Id*. at 28-29.

On April 10, 2013, at the Post-Competency hearing, Petitioner was once again present in state court with his attorney. [Doc. 17-8 at 32]. The parties announced that they had reviewed the report from Dr. Roberson. [Doc. 17-1 at 3]. Petitioner answered questions from Mr. Rennie,

waived his right to a competency trial, and stipulated to post competency evaluation. *Id*. at 3-5. Judge Harbuck accepted the stipulation and Petitioner was found competent. *Id*. at 5-6.

Separate preliminary hearings for each case were held on June 26, 2013. Before the hearings began, and once again in the presence of Judge Harbuck, counsel informed Petitioner of the range of punishment for each charge. Petitioner answered questions from counsel and also rejected a plea offer of 30 years of imprisonment in both cases to run concurrently. [Doc. 17-3 at 3-6]. K.E. and a sheriff's employee testified at the preliminary hearing in Case No. CF-2013-78 and Petitioner was bound over for trial on the Information as charged. *Id*. at 42. Only A.J. testified at the preliminary hearing in Case No. CF-2013-16, and at its conclusion, Judge Harbuck ordered Petitioner to trial on additional charges to those in the original Information. [Doc. 17-2 at 42-44]. The Amended Information was filed in Case No. CF-2013-16 on June 27, 2013. [Doc. 17-8 at 43-48].

On September 10, 2013, in the presence of the Honorable Judge Paula Inge, Petitioner waived jury trial and any objection to the joinder of his felony cases. *Id*. at 61-64. Petitioner clearly explained, in his own words, that he was on medication but that it did not affect his ability to understand the nature of the proceedings. The transcript reflects the following:

> THE COURT: All right. Mr. Eldridge, let me ask you today, are you currently taking any medications or substances today that would affect your ability to knowingly and intelligently waive your right to a jury trial?
>
> THE DEFENDANT: No, ma'am. But I am on medication.
>
> THE COURT: That was going to be my next question. Are you -- are there medications that you should be taking that have been prescribed by a doctor that you are not taking?
>
> THE DEFENDANT: No, ma'am, I'm taking everything that's been prescribed by a doctor, to me.
>
> THE COURT: All right. Can you tell me what it is that you are currently prescribed --
>
> THE DEFENDANT: I'm on blood pressure medicine, and a heart pill, and two different pain pills, and also allergies, and high blood pressure.
>
> THE COURT: When is the last time you took your pain medication?

THE DEFENDANT:  This morning.

THE COURT:  And how long -- how often do you take the pain medication?

THE DEFENDANT:  Three times a day.

THE COURT:  Three times a day?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  In your opinion, do you think that the pain medication that you're taking has affected your ability to understand this waiver today?

THE DEFENDANT:  No, ma'am.

THE COURT:  All right.

\*       \*       \*

[Doc. 17-5 at 5-6].

On January 23, 2014, Petitioner appeared with Mr. Rennie for trial on both cases in state court.  [Doc. 17-6 at 4].  On the record, and in the presence of Judge Inge, counsel once again explained the range of punishment for each charge.  *Id*. at 7-9.  Petitioner answered questions and was reminded of the previously rejected plea offer.  *Id*. at 9.  Assuming the offer was still on the table, Petitioner rejected it for the second time.  *Id*. at 10.  At trial, A.J. and K.E., along with several other witnesses, testified about the allegations of rape and sexual abuse in great detail.  Petitioner elected not to testify in his behalf.  Petitioner was found guilty of one count of first degree rape in Case No. CF-2013-78.  In Case No. CF-2013-16, Petitioner was found guilty of one count of first degree rape of a child under the age of fourteen, 22 counts of forcible sodomy, and eight counts of lewd molestation of a child under the age of twelve.  Petitioner was sentenced by Judge Inge on February 19, 2014.  [Doc. 17-7 at 10-11].  Petitioner thereafter challenged competency on direct appeal.[2]

---

[2]      The Notice of Intent to Appeal was filed with the state court on February 25, 2014. [Doc. 17-8 at 150-59].  Counsel at that point asserted "[t]hat the Defendant was not Competent to stand trial."  *See* "Exhibit 'B': Advisory List of Propositions of Error" dated February 25, 2014. *Id*. at 159.

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992). Additionally, the Tenth Circuit has provided the following guidance:

> Competency to stand trial is a factual question. *See United States v. Boigegrain,* 155 F.3d 1181, 1189 (10th Cir.1998), *cert. denied,* 525 U.S. 1083, 119 S. Ct. 828, 142 L. Ed. 2d 686 (1999). A state court's factual finding of competency is presumed correct. *See* 28 U.S.C. § 2254(e)(1). A petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See id.* A federal court may not issue a writ of habeas corpus unless the state courts' competency decisions were based on an unreasonable determination of the facts in light of the evidence. *See id.* § 2254(d)(2).
>
> It is settled that trying an incompetent defendant violates due process. *See Cooper,* 517 U.S. at 354, 116 S.Ct. 1373. The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (quotation omitted); *see also Walker,* 167 F.3d at 1343.

*Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999).

Petitioner recognizes the importance of *Dusky* and *Cooper* (among other cases) in Ground I and essentially argues that his low intelligence must equate to incompetence. Petitioner, however, did not present any information at trial or on appeal that shows he did not have sufficient ability to consult with his lawyer or that he did not have a rational and actual understanding of the proceedings against him.

Like the OCCA, the undersigned has not identified any basis to question the findings of the forensic psychologist. Dr. Roberson interviewed Petitioner and several witnesses, reviewed available medical and educational records, and administered tests. After considering several factors in evaluating competency, the forensic psychologist opined that Petitioner was competent to proceed even while suffering from intellectual deficits. The court must also keep in mind that Judge Harbuck and Judge Inge had the benefit of observing Petitioner while in court. At one point, Petitioner appeared with his attorney, stipulated to the report and waived his right to a trial on the issue. Judge Harbuck accepted the stipulation and found Petitioner was competent. At other times, Judge Inge was present when Petitioner answered specific questions relating to his medication and waiver of jury trial, range of punishment for crimes, and plea offer. The transcripts provide no

indication that either judge was concerned with Petitioner's competence while he was appearing in court. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge." *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

Petitioner fails to show that the OCCA's ruling in this case was contrary to, or an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Petitioner's Ground I is denied.

## Ground II: Petitioner was denied the effective assistance of counsel in the post-competency examination hearing, resulting in his being forced to trial while incompetent.

Petitioner next scrutinizes trial counsel's performance, claiming that by "stipulating to the conclusion in the report issued by Dr. Roberson, without any argument or analysis of the underlying significant deficits revealed regarding the mental functioning of [Petitioner], trial counsel's performance was deficient under *Strickland*." [Doc. 12 at 26]. Petitioner claims that he was "entitled to an advocate tasked with representing his position regarding competency," and that "the statements by Dr. Roberson in his report, in addition to the history and background of [Petitioner], supported an assertion that [Petitioner] was not competent." *Id*. Pointing to his IQ test score of 66, Petitioner argues that he was not "capable of understanding or waiving anything of legal importance." *Id*. at 27. In summary, Petitioner contends that he is a vulnerable or mentally deficient individual, that he relied upon counsel to vindicate his rights, and that trial counsel was ineffective for not contesting competency at trial. *Id*. at 25, 27.

In response, Respondent notes that the OCCA reviewed the claim and found trial counsel was not ineffective, that the state court's determination of the facts is entitled to a presumption of correctness under § 2254(e), and that "Petitioner has failed to present any evidence, much less clear and convincing evidence, to overcome that presumption of correctness." [Doc. 16 at 16-17]. Respondent contends that the OCCA's decision denying this claim is not contrary to, or an

unreasonable application of, *Strickland*, nor an unreasonable determination of the facts in light of the state court record. *Id*. at 19-20.

In denying the Petitioner's ineffectiveness of counsel claim, the OCCA concluded as follows:

> Similarly, Appellant offers no information or reason to fault trial counsel for allowing him to stipulate to the forensic psychologist's report. Accordingly, trial counsel did not render ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Marquez-Burrola v. State*, 2007 OK CR 14, ¶ 18, 157 P.3d 749, 757. Proposition II is denied.

*Eldridge*, slip op. at 2-3.

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. To prevail on his claim of ineffective assistance of counsel, the defendant must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must overcome the strong presumption that counsel's conduct fell within the wide range of professional conduct, including trial strategy. *Id*. at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Supreme Court has provided additional guidance regarding the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original). The Court further explained:

Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*See Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted).

At a minimum, Petitioner's claim fails the performance prong of *Strickland*. Petitioner, represented by trial counsel, requested a competency examination. The State did not object and the examination was completed. The report was reviewed, Petitioner waived his right to a hearing on the report and stipulated to the report's conclusion. Petitioner now faults counsel for acquiescing in the competency finding. But Petitioner has provided no evidence to dispute that finding. Instead, he reminds the court that he has low intelligence and speculates "it is clear that counsel believed [Petitioner] to be incompetent to be tried." [Doc. 12 at 26]. Petitioner directs the court's attention to "Exhibit 'B': Advisory List of Propositions of Error," which was prepared by trial counsel and shows "[t]hat the Defendant was not Competent to stand trial." [Doc 17-8 at 159]. The exhibit is of little import, however, considering it was prepared by Mr. Rennie *after* the trial was conducted.

Nevertheless, Petitioner fails to show how counsel's actions or inactions constituted deficient performance by counsel. The waiver of the post-competency examination hearing was

not unreasonable in light of the forensic psychologist's report. Dr. Roberson acknowledged Petitioner's low intelligence and opined that Petitioner was competent to stand trial. The forensic psychologist explained that "a Borderline to Low Average range of intelligence is not associated with incompetence" and that Petitioner "can consult with his attorney and rationally assist in his defense." [Doc. 17-8 at 29]. No serious doubt existed as to Petitioner's competency, meaning counsel's representation did not amount to incompetence under prevailing professional norms. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

According to Respondent, Petitioner's claim also fails the prejudice prong of *Strickland*. Perhaps, but additional analysis is unnecessary. "We need not analyze both the performance and prejudice prongs of the *Strickland* test if defendant fails to make a sufficient showing of one." *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (internal quotation marks omitted).

After careful review, the court finds the OCCA's decision on this claim was not contrary to, or an unreasonable application of *Strickland*, and the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground II is denied.


**Ground III: Petitioner's trial counsel was operating under a conflict of interest in representing both Petitioner as well as Petitioner's older brother.**

In Ground III, Petitioner complains that his trial counsel was representing Petitioner and Loyd Eldridge, Sr. at the same time against identical allegations and that counsel "could not ethically pursue a defense that sought to exonerate [Petitioner] by casting blame on Loyd." [Doc. 12 at 30]. Petitioner claims that he "has shown much more than a mere theoretical conflict of interest," emphasizing that "counsel was faced with a client who was for all intents and purposes mentally retarded, a minor complaining witness who accused his big brother first, then changed her mind when her mother told her to do so and the SANE exam showed sexual activity," and that counsel "was precluded from casting total blame on Loyd *because he represented Loyd*." *Id.* at

32.  In support of his claim, Petitioner also points out that Loyd Eldridge, Sr. "received a sentence far more favorable" than Petitioner after a plea bargain was negotiated.  *Id.*

In response, Respondent claims "[t]here is simply no evidence that trial counsel could have pointed to in order to support a defense that Loyd Eldridge sexually assaulted A.J. to the exclusion of Petitioner."  [Doc. 16 at 26].  Respondent acknowledges Loyd Eldridge, Sr. did receive a lesser sentence than Petitioner, but explains that Loyd's sentence was part of a plea bargain and that Petitioner was "offered a plea bargain and turned it down."  *Id.*  Respondent also points out that Petitioner's brother was not charged with two counts of rape, that A.J. was Loyd's only victim, and that the difference in the nature of the crimes and maximum punishments plus the plea agreement "explains the difference in their respective sentences rather than any conflict of interest by counsel."  *Id.* at 27.  Respondent contends that Petitioner "has failed to show any actual conflict of interest with his trial counsel in this case" and that, in particular, Petitioner "fails to demonstrate that his trial counsel had any conflicting duties to Loyd Eldridge in their separate cases where Petitioner's theory at trial was that the victims were untruthful in their allegations against him." *Id.* at 28.  According to Respondent, Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, Supreme Court precedent, or that it was an unreasonable determination of the facts.  *Id.*

The OCCA denied relief on Petitioner's conflict of interest claim:

> As to Proposition III, Appellant was convicted of sexually abusing two female relatives under the age of twelve.  His brother, Loyd Eldridge Sr., the step-father to one of the girls, was also charged with abusing her during the same period of time. While both men were represented by the same appointed counsel, that fact alone does not create a conflict of interest.  According to this victim's testimony, each defendant acted independently.  The Sixth Amendment right to conflict-free counsel is not violated by the mere *theoretical* possibility of divided loyalties. *Mickens v. Taylor*, 535 U.S. 162, 171, 122 S.Ct. 1237, 1243, 152 L.Ed.2d 291 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 349-350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).  Proposition III is denied.

*Eldridge*, slip op. at 3 (footnote omitted).  The OCCA also explained that Petitioner filed a Motion to Supplement Appeal Record [Doc. 16-4], seeking to include copies of court documents from the prosecution of Loyd Eldridge, Sr.  *Id.* at 3 n. 3.  The OCCA denied the Motion to Supplement Appeal Record.

The Supreme Court has explained "that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). More recently, the Tenth Circuit has summarized the law as follows:

> "An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client." *Workman v. Mullin,* 342 F.3d 1100, 1107 (10th Cir.2003) (quotation omitted). In other words, there must be more than a potential conflict of interest or "a mere theoretical division of loyalties." *Mickens v. Taylor,* 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). To prevail, the defendant "has the burden of showing specific instances to support [her] claim of actual conflict of interest." *Edens v. Hannigan,* 87 F.3d 1109, 1114 (10th Cir.1996); *accord Castro v. Ward,* 138 F.3d 810, 821 (10th Cir.1998).

*United States v. Flood*, 713 F.3d 1281, 1286-87 (10th Cir. 2013).

Petitioner and Loyd Eldridge, Sr. were not co-defendants, and the OCCA correctly recognized that the dual representation of the siblings does not automatically create an actual conflict of interest. Simply put, the court has carefully reviewed the documents filed herein, including the Motion to Supplement Appeal Record, and Petitioner has not shown that counsel was forced to make choices advancing interests to Petitioner's detriment. It is true that Loyd Eldridge, Sr. was convicted of multiple counts of forcible sodomy and lewd acts with his step-daughter, A.J., and that the sexual misconduct occurred during the same period of time as alleged in the counts against Petitioner. It is also true that, initially, A.J. only reported being molested sexually by Loyd Eldridge, Sr. [Doc. 12 at 12; Doc. 17-6 at 134]. Pointing to these facts, Petitioner complains that counsel was unable to shift the blame to Loyd Eldridge Sr., which according to Petitioner, was his best defense strategy. The evidence, however, did not support a defense that A.J. was *only* sexually assaulted by Loyd Eldridge, Sr.

During the investigation, A.J. reported that she was subjected to sexual abuse by both men, and the testimony in court did not indicate that Loyd Eldridge, Sr. was present when A.J. was repeatedly abused by Petitioner. The OCCA correctly noted that, according to the victim's testimony, Petitioner and Loyd Eldridge, Sr. acted independently. A.J. testified that the abuse took place within Petitioner's bedroom, located within her babysitters' home. A.J. stayed with the

babysitters during times when Loyd Eldridge, Sr. and A.J.'s mother went to the casino. [Doc. 17-6 at 17-18]. A.J. was raped once, and sexually assaulted on many occasions, by Petitioner in his bedroom. *Id*. at 19-31. The evidence showed the other victim, K.E., was also raped by Petitioner in his bedroom. *Id.* at 76-77.

Under the circumstances, counsel argued that the minor victims were not telling the truth. This defense strategy was reasonable in light of the evidence. Furthermore, the fact that Loyd Eldridge, Sr. entered pleas of no contest to 42 counts of sexual misconduct with A.J. and received a more favorable sentence does not lend support to Petitioner's claim. Petitioner, unlike his brother, rejected a plea deal and was facing additional charges associated with the rape of two minor children. It should come as no surprise that his brother received a more favorable sentence. Petitioner has not shown an actual conflict of interest adversely affected counsel's performance.

The court finds the OCCA's determination that there was no conflict of interest is not contrary to, or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). The court further finds the decision by the OCCA was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). Therefore, this ground for habeas relief is meritless.

**Ground IV:   The Information was vague.**

In Ground IV, Petitioner complains that the Amended Information filed in CF-2013-16 is vague. The Amended Information alleged one count of rape, two counts of sodomy (fellatio), eight counts of lewd molestation (rubbing his penis on A.J.'s vagina), and twenty counts of sodomy (cunnilingus), which Petitioner claims were based on "estimates provided by A.J." [3] [Doc. 12 at 33]. Petitioner contends that the Amended Information "did not allege separate and distinct offenses sufficient to comply with Due Process," explaining that "[c]harging documents must meet minimum constitutional standards under the Sixth and Fourteenth Amendments to the United States Constitution." *Id*. at 34. Petitioner argues that the Amended Information in this case failed

---

[3]     Petitioner does not argue that the Information filed in Case No. CF-2013-78, regarding the rape of K.E., is vague.

to meet two of the three mandates of *Russell v. United States*, 369 U.S. 749, 763-64 (1962), or more particularly, that it did not provide the accused adequate notice of the charges against which he must defend, and that it did not provide to the accused protection against double jeopardy by enabling him to plead an acquittal or conviction to bar future prosecutions for the same offense. *Id*. In other words, he claims it was impossible to defend against the multiple allegations in this case (and if necessary, future charges based upon the allegations) "because there is no specific way to differentiate between the acts alleged." *Id*. Petitioner sets forth the following argument:

> The Information was so vague and indefinite, identically worded allegations spread out over a six year time frame, that [Petitioner] not only had no way to defend against individual allegations, but also is unable to defense [sic] against allegations by the same complaining witness in the future since he would not be able to plead double jeopardy protection with any degree of specificity.

*Id*. at 35. Petitioner explains that "the legal test . . . is whether the charges are sufficiently pled to ensure the accused the chance to defend himself at trial and against similar allegations in the future." *Id*.

In response, Respondent directs the court's attention to *Hamling v. United States,* 418 U.S. 87, 117 (1974), explaining that "[a] charging instrument is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." [Doc. 16 at 29]. In short, Respondent contends that the OCCA's ruling is supported by the record, that "[t]he Amended Information was sufficient to put Petitioner on notice of the crimes charged and to allow him to present a defense" and that "[t]he Amended Information was also sufficiently specific that Petitioner could not be put in jeopardy a second time for the same acts." *Id*. at 30. Respondent further argues that "the State had the option to charge and prove separate acts of rape, lewd molestation and sodomy which it did in the present case," and that the allegations in the Amended Information were based on A.J.'s preliminary hearing testimony, which served to put Petitioner on notice. *Id*. at 30-31. Respondent also compares the instant case to *Kimbro v. State*, 857 P.2d 798 (Okla. Crim. App. 1990) and *United States v. Dashney*, 117 F.3d 1197 (10th Cir. 1997), arguing that Petitioner's claim is without merit:

> The OCCA [in *Kimbro*] found the Information was sufficient to put the defendant on notice of his crimes and it did not expose him to double jeopardy. The Court

held, "In determining the sufficiency of the Information, this Court will be guided by practical rather than technical considerations." *Kimbro*, 857 P.2d at 799-800. The OCCA found that, "To hold otherwise would create undue risk to child victims who for legitimate reasons are unable to specify the date or dates on which they were molested." *Id.* at 799-800. "An indictment [or information] need only meet minimal constitutional standards, and we determine the sufficiency of an [information] by practical rather than technical considerations." *Dashney,* 117 F.3d at 1205.

Likewise in the present case, the victim was a child who ranged in age from six to 12-years-old over the time period Petitioner sexually molested her in his bedroom. The only certain dates were that the sexual abuse started around the time the victim was six-years-old in 2004 and continued until her mother left her stepfather in 2010 and the sexual assaults were reported to the police. This was as specific as the State could make the charges based on the victim's childhood memories where the sexual assaults occurred numerous times over several years. A.J. was specific as to the location and the various sex acts perpetrated against her by Petitioner at Petitioner's house between 2004 and 2010. Under Oklahoma law, "It is well settled that the State is not required to prove an offense took place on the exact date charged." *Robedeaux v. State*, 908 P.2d 804, 806 (Okla. Crim. App. 1995) (internal quotations omitted). The detailed language of the Information, along with the dates alleged, was more than sufficient to put Petitioner on notice of the charges against him and to protect him from double jeopardy.

\*       \*       \*

It is unremarkable that A.J., who was a young girl at the time of the sex offenses against her by Petitioner, was not able to remember specific dates of when each of the numerous sexual assaults occurred over a multi-year period. She was able, however, to testify as to what happened, how it happened, where it happened and, other than the rape, that each act was perpetrated repeatedly by Petitioner over an extended period of time between 2004 and 2010. A.J.'s testimony left no reasonable doubt as to the occurrence of each charged act of sexual assault. *Scott v. State*, 668 P.2d 339, 343 (Okla. Crim. App. 1983).

The testimony of A.J., coupled with the dates in the Amended Information, was sufficient to protect Petitioner from a subsequent prosecution for the same acts with A.J. during the same time period. "The double jeopardy clauses of both the federal and state constitutions protect Appellant from being tried a second time for the same acts which led to this conviction." *Kimbro*, 857 P.2d at 801. Accordingly, the Amended Information was not unconstitutionally vague and Petitioner is not entitled to habeas relief.

*Id*. at 34-35.

The OCCA found no merit in Petitioner's claim:

As to Proposition IV, one of the victims testified that Appellant committed various acts of sexual abuse against her, at times convenient for him, over a six-year period. This victim was as specific as could be expected under the circumstances. Appellant was not denied the ability to defend himself. *Kimbro v. State*, 1990 OK CR 4, ¶¶ 7-9, 857 P.2d 798, 800; *Jones v. State*, 1989 OK CR 66, ¶ 17, 781 P.2d 326, 329-330; *Drake v. State*, 1988 OK CR 180, ¶ 7, 761 P.2d 879, 881-82. Proposition IV is denied.

*Eldridge*, slip op. at 3-4.

The OCCA's rejection of Petitioner's claim is not unreasonable. The undersigned has reviewed the Amended Information, which was based on A.J.'s preliminary hearing testimony. The Amended Information set out the elements of the charges and the time period of the charges. [Doc. 17-8 at 43-48]. The victim, the act charged and the time window of when the crime occurred were specified within each count. Under the circumstances, the language and dates alleged therein were more than sufficient to put Petitioner on notice of the charges against him and to protect him from double jeopardy.

In *Burling v. Addison*, No. 11-6164, 451 Fed. App'x. 761 (10th Cir. Dec. 13, 2011) (unpublished), a state court prisoner sought a certificate of appealability from the Tenth Circuit after a federal district court denied his request for relief under 28 U.S.C. § 2254. The petitioner had been convicted by a jury on 12 counts of sexual abuse of a child and sentenced to 36 years in prison. Like the case in hand, Mr. Burling asserted his Information was vague. The Tenth Circuit denied the application for certificate of appealability and dismissed his appeal, explaining as follows:

Applicant claims that the information charging him with sexual abuse was so vague that it violated his Sixth and Fourteenth Amendment rights. The amended information alleged 12 counts of sexual abuse that occurred during a six-year time span. Applicant argues that because the information did not include the dates and locations of the alleged abuse, he cannot assert double jeopardy in future proceedings, he could not formulate a defense to the charges against him, and the trial court could not make a meaningful determination of when he would be eligible for parole.

The OCCA rejected Applicant's double-jeopardy claim because "jeopardy has attached to all alleged sexual acts between [Applicant] and [the victim] during the period of time specified in the Information." Summary Op. at 4, *Burling,* No. F–2006–1288 (Aplt.App. at 64). And regarding his ability to prepare a defense, it said that the materials made available before trial "sufficiently apprised [Applicant] of

the charges against him" and "the prosecutor satisfied his duty to inform the defendant within reasonable limits and as best known by the State, the time frame in which these acts were believed to have occurred." *Id.* The OCCA did not explicitly address parole.

Applicant fails to point to any deficiency in the OCCA's disposition of his double-jeopardy concern. Nor does he identify any Supreme Court opinion that would require his charging document to specify the time and location of the offense to inform him fairly of the charges filed against him. Indeed, this circuit has previously rejected a similar due-process challenge to charging documents in a child-abuse case. *See Hunter v. New Mexico,* 916 F.2d 595, 596, 600 (10th Cir.1990) (rejecting § 2254 petitioner's due-process challenge to a charging document that contained three counts, the first spanning four years, the second spanning three years, and the third spanning more than a year). As for the contention that the vagueness of the information prejudices Applicant with respect to parole eligibility, he utterly fails to explain what his concern is, much less present supporting argument. He therefore has not shown that the OCCA's rejection of his vagueness claim was contrary to or an unreasonable application of federal law.

*See Burling,* 451 Fed. App'x. at 766. [4]

More recently, in *Vann v. Whitten*, No. 15-CV-0275-JED-FHM, 2018 WL 4964365 (N.D. Okla. Oct. 15, 2018), a state prisoner convicted of three counts of child sexual abuse and sentenced to three concurrent life sentences argued that his information failed to uphold minimal due process standards because it was overly vague. The Honorable John E. Dowdell provided the following reasons for denying the prisoner's § 2254 claim:

The Court agrees with Respondent that Petitioner is not entitled to habeas relief on this claim because the OCCA's decision is neither contrary to nor an unreasonable application of clearly established federal law. Doc. 8, at 7-15. "An Information may violate the Sixth Amendment by failing to provide adequate notice of the nature and cause of the accusations against the defendant." *Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002). The Supreme Court has identified "two constitutional requirements" for a charging document. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). A charging document "is sufficient if it [1] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and [2] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Notably, Petitioner fails to identify, either in his petition or direct appeal brief, any Supreme Court cases clearly establishing that the

---

[4]    *Burling* and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Constitution requires a state to either allege a particular range of dates or provide a certain level of specificity with respect to multiple acts when it charges a defendant with sexually abusing a child. Petitioner's failure to cite any such cases is not surprising. As some courts have recognized, "Supreme Court precedent in this area is very general and lacks a specific application to the problems encountered in prosecutions of child sexual abuse." *Crawford v. Pennsylvania*, 714 F. App'x 177, 180 (3d Cir. 2017) (unpublished); *see also Burling v. Addison*, 451 F. App'x 761, 766 (10th Cir. 2011) (unpublished) (noting habeas petitioner's failure to "identify any Supreme Court opinion that would require his charging document to specify the time and location of the offense to inform him fairly of the [child sexual abuse] charges against him"); *Hunter v. New Mexico*, 916 F.2d 595, 596-97, 600 (10th Cir. 1990) (citing a First Circuit decision and state court decision to summarily reject, in pre-AEDPA case, habeas petitioner's "argument that the information was deficient in failing to identify specific dates for the crimes alleged" in a child sexual assault case).

The Supreme Court's "general proposition that a defendant must have adequate notice of the charges against him" "is far too abstract to establish clearly the specific rule[s] [Petitioner] needs" in this case. *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014). In his direct appeal brief, Petitioner primarily relied on federal court decisions to support his challenge to the sufficiency of the charging document. Doc. 8-1, at 16-22. But regardless of whether lower federal courts have established specific rules regarding the constitutional adequacy of charging documents in child sexual abuse cases, the Supreme Court has not. Lower federal courts may not "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Smith*, 135 S. Ct. at 4 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (*per curiam*)). Further, even if lower federal courts have adopted more specific rules for the sufficiency of charging documents in child sexual abuse cases, those rules do not constitute clearly established federal law for purposes of habeas review. The AEDPA "prohibits the federal courts of appeals [as well as federal district courts] from relying on their own precedent to conclude that a particular constitutional principle is "clearly established" within the meaning of § 2254(d). *Smith*, 135 S. Ct. at 2.

In short, the "clearly established Federal law" with respect to Petitioner's Ground 1 claim is the general proposition announced in *Hamling*: due process is satisfied if the charging document (1) provides adequate notice of the charges and (2) provides adequate protection against future prosecution for the same acts. *United States v. Resendiz-Ponce*, 549 U.S. at 108; *Hamling*, 418 U.S. at 117. When, as here, the controlling legal principle states only a general proposition, a state court has more leeway in applying that principle. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (explaining that "evaluating whether a rule application was unreasonable requires considering the rule's specificity," thus, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations"). Significantly, in determining the sufficiency of a charging document, courts may look beyond the charging document itself and consider other materials that were provided to the defendant before trial. *See Sallahdin*, 275 F.3d at 1227 (considering

"material available at the preliminary hearing and through discovery," along with the charging document, to conclude defendant received sufficient notice of charges); *Parker v. State*, 917 P.2d 980, 986 (Okla. Crim. App. 1996) (providing that the OCCA will consider preliminary hearing testimony and discovery materials to determine whether charging document satisfies due process requirements).

*Vann v. Whitten*, No. 15-CV-0275-JED-FHM, 2018 WL 4964365, at *6.[5] The lower court's reasoning in the *Vann* case, and the Tenth Circuit's analysis in *Hunter* and *Burling*, shed light on the issues before this court.

In the case at hand, A.J. testified extensively at the preliminary hearing about the sexual abuse, which put Petitioner on notice of the State's allegations within the Amended Information and provided adequate protection against future prosecution for the same acts. Her testimony at the preliminary hearing also closely matched her testimony during the non-jury trial. A.J. testified that she was raped one time by Petitioner when she was six or seven years old, which in light of her date of birth, matches the two-year time period of the rape charge in the Amended Information. [Doc. 17-2 at 8-13; Doc. 17-6 at 22-23]. Moreover, the six-year time period of "2004 through 2010" within the Information matches up to A.J.'s testimony regarding the lewd molestation and forcible oral sodomy charges. During this six-year time period, Petitioner regularly called A.J. to his bedroom and made her take her clothes off and lay on the bed. [Doc. 17-2 at 9-10; Doc. 17-6 at 19]. A.J. testified that Petitioner would take his clothes off, lay on top of A.J. and rub his penis against A.J.'s vagina. [Doc. 17-2 at 15-16; Doc. 17-6 at 19-21, 23]. This happened on at least eight occasions when A.J. was six to twelve years old.[6] [Doc. 17-2 at 18-19; Doc. 17-6 at 23-24]. On two occasions, Petitioner laid on the bed and made A.J. place her mouth on his penis.[7] [Doc. 17-2 at 13-15, 19-20; Doc. 17-6 at 25-27]. Petitioner also performed forcible oral sodomy on A.J. at least twenty times. [Doc. 17-2 at 16-17, 20-21; Doc. 17-6 at 28-30].

The sexual abuse alleged in the Amended Information was based on A.J.'s preliminary hearing testimony and was sufficient to put Petitioner on fair notice of the charges and to enable

---

[5] "[D]istrict court opinions have persuasive value only and are not binding as a matter of law." *United States v. Worthon,* 520 F.3d 1173, 1179–80 (10th Cir. 2008).

[6] At the preliminary hearing, A.J. testified that Petitioner rubbed his penis against her vagina at least eight times. At the non-jury trial, she testified that it happened on at least 20 different occasions.

[7] A.J. testified at the preliminary hearing that Petitioner inserted his penis into her mouth on two separate occasions. At the non-jury trial, she testified that it happened five or six times.

him to assert a double jeopardy defense. Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable determination of, Supreme Court precedent or an unreasonable determination of the facts. Petitioner's Ground IV is denied.


**Ground V:  Excessive Sentence.**

Petitioner claims his sentence "was shockingly excessive and should be modified." [8] [Doc. 4 at 16]. In his direct appeal brief filed with the OCCA, Petitioner argued that the abuse of the young girls "appeared to have begun with Mr. Eldridge's older brother, the stepfather of A.J., leading the way," that Petitioner was "a vulnerable adult with significant mental deficits," and that the "toxic family environment was poisonous to all involved." [Doc. 16-1 at 50-51]. Petitioner also pointed out that his brother ultimately received a lesser sentence. *Id*. at 51. Petitioner asked the OCCA to consider the unique facts and circumstances of his case and modify his sentence or direct a portion of the sentence to be suspended. *Id*. at 51-52.

In its brief filed with the OCCA, the State explained that Ground V has no merit, arguing that a forty-year sentence "for raping two young girls as well as repeatedly sodomizing and molesting one of them is not excessive." [Doc. 16-2 at 39]. The State acknowledged that Petitioner's brother received a lesser sentence than Petitioner, but also noted that his brother's sentence was part of a plea bargain. *Id*. Petitioner turned down the State's plea offer and was ultimately sentenced within the range prescribed by statute. *Id*. at 39-40, 42. The State further explained that Petitioner's brother was not charged with rape. *Id*. at 40. In contrast, Petitioner was charged with two counts of rape and each count carried a maximum sentence of life without parole. *Id*.

The OCCA denied relief on Petitioner's claim, finding as follows:

> As to Proposition V, given the nature of Appellant's crimes and the age of the victims, we cannot say the sentences imposed by the trial court are shocking to the conscience. *Rea v. State*, 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149. Proposition V is denied.

---

[8]    The excessive sentence claim is set forth in Ground V of the § 2254 petition [Doc. 4 at 16]. It is not addressed in Petitioner's brief in support of motion. [Doc. 12].

*Eldridge*, slip op. at 4.

Petitioner claims his sentence is shockingly excessive and should be modified, but he does not identify any federal constitutional violation. Moreover, he has not shown that his sentence falls outside the state statutory limits. In *Dennis v. Poppel*, 222 F.3d 1245 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001), the Tenth Circuit provided the following guidance:

> We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988).

*Dennis*, 222 F.3d at 1258. Here, Petitioner's 40-year sentence was clearly within the statutory range of permissible punishment under Oklahoma law. Convictions for first degree rape and rape of a child carry a maximum penalty of life without parole. 21 O.S.2011, § 1115.

After careful consideration of the circumstances of this case, this court finds the OCCA's decision of this claim was not contrary to, or an unreasonable application of, Supreme Court law. Therefore, this claim is denied.

## Ground VI:  Cumulative Error

In his final claim, Petitioner alleges the cumulative effect of the errors at trial deprived him of a fundamentally fair trial. [Doc. 12 at 36]. The OCCA also found no merit in this claim:

> As to Proposition VI, having found no error in the preceding propositions, there can be no error by accumulation. *Sanders v. State*, 2002 OK CR 42, ¶ 17, 60 P.3d 1048, 1051. Proposition VI is therefore denied.

*Eldridge*, slip op. at 4.

The Tenth Circuit defers to the OCCA's cumulative error determination "unless [the ruling] constitutes an unreasonable application of the cumulative-error doctrine." *Thornburg v.*

*Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005); *Simpson v. Carpenter*, 912 F.3d 542, 603 (10th Cir. 2018). The OCCA reviewed the individual allegations of errors raised on direct appeal and found none warranted relief, and under the circumstances, the OCCA's cumulative error analysis is not unreasonable. The Tenth Circuit has explained that "[i]n the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis we undertake only if there are at least two errors." *Fairchild v. Trammell*, 784 F.3d 702, 724 (10th Cir. 2015) (quoting *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013)).

The court finds there were no constitutional errors to aggregate in this action, meaning there is no basis for a cumulative error analysis. Petitioner has failed to show that the OCCA's ruling on this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. This ground for relief must be denied.

**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability shall be denied.

ACCORDINGLY, Petitioner's petition for a writ of habeas corpus [Doc. 4] is DENIED, and a certificate of appealability is DENIED.

It is so ordered this 3nd day of September, 2019.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA